IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
AUG 0 5 2002
Michael N. Milby, Clerk

| | |
|---|---|
| THE UNITED STATES OF AMERICA § | |
| § | |
| § | |
| VS. § | CR-H-98-18(02) |
| § | |
| § | |
| YANK BARRY § | |

### DEFENDANT YANK BARRY'S MOTION FOR A
### NEW TRIAL DUE TO INACCURACY OF TRIAL TRANSCRIPT

Defendant Yank Barry, by and through undersigned counsel, hereby respectfully moves this Court for a new trial pursuant to Fed. R. Crim. P. 33 due to the inaccuracy of the Trial Transcript in this matter.

As the Court is aware, the original transcript of the trial in this action was not produced until more than eight months after the conclusion of the trial. When the transcript was finally produced, it was riddled with errors, some of which were obvious and some of which – such as a missing portion of Defendant Barry's cross-examination – were apparent only on close examination. After Defendant Barry filed his Motion for Evidentiary Hearing on Accuracy and Completeness of Trial Transcript and for Suspension of Briefing Deadlines, this Court delayed the briefing of post-trial motions and held a hearing on May 31, 2002 to address the inaccuracy and incompleteness of the transcript. The Court then ordered that the transcript be corrected. The ensuing effort to correct the transcript, however, left approximately one third of the transcript uncorrected and uncovered significant errors in that portion that was corrected. Thus, there remains no substantially verbatim transcript of the trial. A new trial should therefore be granted.

7153884_1

302

## BACKGROUND

The Chief Deputy Clerk of this Court, in the month following this Court's Order that the transcript be corrected, undertook a review of available audiotape of the trial that the court reporter had recorded as a backup to her primary transcription system. Using these tapes and other available records he then attempted to reconstruct a substantially verbatim record of the trial. As the Chief Deputy Clerk's report explains, however, those tapes – like the original transcript volumes that had been filed and produced to the parties – were often labeled inaccurately, and did not cover the entire trial. *See* Report on Accuracy and Completeness of Trial Transcript (June 27, 2002) ("Transcript Report") at 2-3. Specifically, the Transcript Report found that, upon review of those portions of the transcript for which audiotape backup existed – which covered 69.3% of the transcript pages – the transcript contained 798 errors, divided into the following four categories (*see id.* at 5):

| | |
|---|---|
| "Misinterpretations" (Words or phrases inaccurately transcribed): | 393 |
| "Errors" (Incorrect dollar amounts, dates, names and numbers): | 42 |
| "Omissions" (Omitted parts of questions, answers, etc.) | 334 |
| "Mis-attributions" (Incorrect attribution of Court, attorney or witness) | 29 |

If the error rate found in the 941 pages of transcript reviewed by the Deputy Clerk is applied to the additional 381 transcript pages for which no backup tape is available, the total number of errors in the entire transcript would be approximately 1,150. Therefore, assuming that the error rate was constant throughout the trial, there would probably be more than 350 additional errors in the non-reviewed portions of the transcript.

The validity of this projected error rate was further confirmed by the Chief Deputy Clerk's First Amended Report on Accuracy and Completeness of the Trial Transcript, which was

filed on July 8, 2002 after the court reporter located an additional unlabeled audiotape. This new tape covered approximately 30 additional transcript pages, for a total of 971 pages, and 71.55% of the transcript, reviewed. *See* First Amended Report on Accuracy and Completeness of the Trial Transcript (July 8, 2002) at 2. Those pages contained an additional 28 corrections – 11 "misinterpretations," 5 "errors," 11 "omissions," and 1 "mis-attribution." *Id.* Again, extrapolating these findings to the entire transcript, the total number of likely errors in the transcript is 1,154, more than 325 of which are in the 350 non-reviewed, non-corrected pages of transcript.[1]

The current, partially corrected version of the Trial Transcript is not a substantially verbatim record of the trial, and a new trial is therefore required. First, as noted above, there are likely to be hundreds of uncorrected errors in the uncorrected portion of the transcript; and judging from the significance of those errors identified in the portion of the transcript that was reviewed, many of those uncorrected errors are likely to be substantive and significant, rendering an effective review of the evidence on appeal impossible. Second, even the corrected portions of the transcript still appear to contain substantial and significant omissions, such as a portion of Defendant Barry's cross-examination, during which several witnesses recollect a series of events that are nowhere to be found in the transcript. *See* Motion for Evidentiary Hearing on Accuracy and Completeness of Trial Transcript and for Suspension of Briefing Deadlines (May 23, 2002)

---

[1] Following the filing of the Transcript Report and the First Amended Transcript Report, the Court ordered briefing of the Defendants' post-trial motions, which are pending, and separate Motions relating to the accuracy and completeness of the Trial Transcript. Defendant Barry's Motion for Judgment of Acquittal or in the Alternative for a New Trial was based on the partially-corrected transcript that accompanied the Transcript Report and the First Amended Transcript Report. Defendant Barry therefore reserved any additional grounds for acquittal or new trial that may depend upon review of a complete and accurate transcript. *See* Defendant Yank Barry's Motion for Judgment of Acquittal or in the Alternative for a New Trial (July 22, 2002) at 1 n. 1.

at 2-4. As a result of these errors, this Court should, in the event that a Judgment of Acquittal is not entered in favor of Defendant Barry on other grounds, order a new trial.

## ARGUMENT

### I. DEFENDANT BARRY IS ENTITLED TO A NEW TRIAL BECAUSE THE CORRECTED TRIAL TRANSCRIPT IS NOT A SUBSTANTIALLY VERBATIM RECORD OF THE TRIAL

It is "established beyond any shadow of a doubt that a criminal defendant has a right to a record on appeal which includes a complete transcript of the proceedings at trial." *United States v. Selva,* 559 F.2d 1303, 1305 (5th Cir. 1977) (footnote omitted) (citing *Hardy v. United States,* 375 U.S. 277 (1964)). When, as here, "a defendant is represented by an appellate lawyer different from the trial lawyer, a complete and accurate transcript is an imperative." *United States v. Margetis,* 975 F.2d 1175, 1176 (5th Cir. 1992). The standard of review applied in such a situation does not require "a criminal defendant [to] show specific prejudice in order to obtain relief." *Id.*

This right is protected by the Court Reporters Act, which requires that "all proceedings in criminal cases had in open court" must be "recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method, subject to regulations promulgated by the Judicial Conference . . . ." 28 U.S.C. § 753(b). But even though "this language [of the Court Reporters Act] is clear and its requirements are mandatory," *Selva,* 559 F.2d at 1305, the absence of a verbatim transcript does not as a matter of law require a new trial. Rather, a transcript that is incomplete or inaccurate may suffice if the Court can "conclude affirmatively that no substantial rights of the [defendant] have been adversely affected by the omissions from the transcript." *Id.* at 1306. Thus where as here the transcript is incomplete or inaccurate and there has been an attempt at reconstruction, the Fifth Circuit applies a three part test to determine whether it can make such an "affirmative conclusion," failing which a new trial is required:

> From *Selva* [] and its progeny, we [] discern three interrogatories to be answered . . .: (1) which standard of review to apply, which is dependent on whether the defendant is represented on appeal by the same attorney who defended him at trial; (2) if the appellate counsel differs, whether the lost portion is substantial and significant; and (3) if the portion is substantial and significant, whether the trial court's reconstruction amounts to a "substantially verbatim account" of the missing portion of the transcript.[2]

Here, the answers to those questions lead inevitably to the conclusion that the transcript is insufficient and that a new trial is required. *See Selva,* 559 F.2d at 1305-06 (reversing trial court's refusal to grant new trial where appellant was represented by new counsel and where a "substantial and significant" part of the transcript was missing and could not be reconstructed, even where "appellant allege[d] no specific error" in that portion of the transcript). First, Mr. Barry will be represented by separate counsel on appeal – counsel who were chosen and introduced after trial for purposes of sentencing and appeal but before the transcript was made available or the errors in it were discovered. *See Pace,* 10 F.3d at 1125 (rejecting contention that appellate counsel who participated in some proceedings in the trial court, other than trial, "should be deemed the functional equivalent of appellant's trial attorney"). Second, as demonstrated below, the errors in this transcript are "substantial and significant" – ranging from a missing portion of Defendant Barry's own testimony to errors that changed exculpatory testimony at trial into inculpatory testimony in the transcript. *Compare id.* (*Allen* charge given to jury in response to jury note was a "'substantial and significant' portion of the trial record"); *Selva,* 559 F.2d at 1304-06 (closing arguments were a "substantial and significant portion of the record"). And third, the reconstruction of the transcript by the Chief Deputy Clerk did not yield a "substantially verbatim account" of the trial: A significant section of Defendant Barry's testimony is still missing, and nearly one third of the transcript – including some of the most critical parts of the

---

[2] *United States v. Pace,* 10 F.3d 1106, 1124-25 (5th Cir. 1993).

trial – remains uncorrected. These is also a near certainty that the uncorrected portion contains hundreds of errors similar to those that have already been found. Unlike the successful reconstruction in *Margetis,* 975 F.2d at 1177, where reconstruction of cross-examination performed by retrieving it from a defective diskette and then transcribing it in full, followed by examination of the court reporter, who the Court found credible, provided a substantially verbatim reconstruction of the portion of the transcript that the reporter had earlier deemed missing due to the belief that it could not be retrieved from the defective diskette, here no such reconstruction is possible.

### 1. *The Errors thus far Identified in the Transcript Demonstrate the Likelihood that Significant and Prejudicial Errors Remain*

As noted above, the error rate in those portions of the transcript that were compared to audiotape of the trial applied to the remainder of the transcript indicates that more than 300 additional errors exist in those portions of the trial that were not audiotaped. Moreover, those portions of the trial that remain unreviewed include key parts of the trial – in addition to the entire opening statements, the testimony of several important witnesses remains unreviewed: (i) 49 pages of testimony of Janie Thomas, the Texas Department of Criminal Justice ("TDCJ") food service director, who testified about Defendant Collins's advocacy of VitaPro, *see* Trans., Aug. 8, 2001 (docket # 220) at 77-126; (ii) 18 pages of testimony of former TDCJ Deputy Director Larry Kyle, who testified about the manner in which Collins allegedly shepherded the VitaPro contracts through the TDCJ approval process, *see* Trans., Aug. 8, 2001 (docket # 220) at 126-44; (iii) 85 pages of testimony of Patrick Graham, the admitted liar who was the star of the government's case and the only witness to provide any direct evidence in support of the government's bribery allegation, *see* Trans., Aug. 10, 2001 (docket # 178) at 3-42; Trans., Aug. 10, 2001 (docket # 277) at 3-26, 28-32; Trans., Aug. 10, 2001 (docket # 179) at 3-17; Trans.,

Aug. 14, 2001 (docket # 214) at 33-34, 59-61; and (iv) 17 pages of Defendant Barry's own testimony, see Trans., Aug. 16, 2001 (docket # 216) at 112-26; Trans., Aug. 17, 2001 (docket # 281) at 15-17.

A review of the errors identified in those portions of the transcript that were reviewed reveals that the original, uncorrected transcript contained significant errors and omissions, in some cases turning testimony directly on its head:

- According to the original transcript, and the original Transcript Report, government witness Larry Kyle, the TDCJ Deputy Director, was asked on direct examination whether Defendant Collins's instruction to finalize the TDCJ decision memorandum memorializing the five year VitaPro contract by "walking it through" the relevant offices to get the needed signatures was routine. According to the transcription, he responded with an unequivocal "No." When an audiotape of this testimony was later located and the First Amended Transcript Report was produced, however, this testimony – which was unqualifiedly in support of the government's circumstantial case – turned out to be incorrect and almost directly contrary to Kyle's actual testimony, which supported the defense: Kyle testified that walking a contract through for signature was "Not routine[], but sometimes it's done." Trans., Aug. 8, 2001 (docket # 220) at 152-53.

- Defendant Collins was asked during his testimony whether his management style typically included the sort of direct involvement in TDCJ projects that the government relied so heavily upon to show his allegedly abnormal support of VitaPro. According to the transcription, the Court then interrupted and requested a recess, without any response from Collins to the question. *See* Trans., Aug. 15, 2001

(docket # 215) at 17. The corrected transcript, however, shows that Collins in fact had a practice of becoming personally involved in TDCJ projects. *Id.*

- TDCJ Deputy Director Larry Kyle's testimony about the manner in which the five year VitaPro contract was finalized was again garbled in the original transcription in a way that made Mr. Collins's advocacy of the contract appear much more one-sided – and in favor of VitaPro – than Kyle actually testified. Indeed, the transcription contained two errors in his testimony about the series of events shortly after Collins directed that the contract be finalized in September 1995. In the first error, the transcript showed that Kyle directed two TDCJ subordinates (Jack Crimm and Caldwell Prejean) to "get together and hand [the contract] back through and get it signed," when in fact he also told them, before signing it, to "work out whatever [their] differences were." *See* Trans., Aug. 8, 2001 (docket # 220) at 148. In other words, rather than ignoring TDCJ concerns about the contract – as the original transcript made it appear – Collins's directions were to address TDCJ concerns prior to signing the document. That error was complicated by the second error, on the next page, in which Kyle discussed how the contract was finalized: The original transcript shows Kyle testifying that Prejean "and **Yank** worked out the details," referring to Defendant Barry. *Id.* at 149 (emphasis added). This was corrected in the First Amended Transcript Report to show that Kyle stated that Prejean "and **Jack** worked out the details," referring to TDCJ employee Jack Crimm. *Id.* (emphasis added). Again, the transcription made it appear that, pursuant to Collins's direction, TDCJ personnel had been instructed to ignore their concerns and enter the contract by conceding to Defendant Barry, when the actual testimony is to the contrary.

These are only examples of the more than 800 errors that have thus far been corrected. And as noted above, it is beyond dispute that hundreds of additional, yet uncorrected, errors remain in those portions of the transcript for which no backup audiotape exists. Any one, and perhaps several, of those errors could be as significant – or more significant – than those identified above.

### 2. The Transcript Still Omits a Significant Segment of Defendant Barry's Cross-Examination

As noted in Defendant Barry's Motion for Evidentiary Hearing on Accuracy and Completeness of Trial Transcript, filed May 23, 2002, the original transcript contained a significant omission from Defendant Barry's testimony. Specifically, the transcript of Barry's testimony is apparently missing several minutes at the conclusion of the government's cross-examination. The transcript contains an abrupt end to Mr. Frels's questioning of Barry, in which Frels asked about Mr. Collins's departure from TDCJ, followed by a defense objection to the question as asked and answered, and a question by the Court as to whether Barry's counsel had any redirect. *See* Trans., Aug. 17, 2001 (docket # 281) at 44-45. More than eight months after the trial, on April 22, 2002, the Court Reporter certified that this transcript volume was an accurate transcription of the proceedings. *Id.* at 116.

That version of how Defendant Barry's cross-examination ended is contradicted by the recollection of four eyewitnesses – Barry, two of his lawyers, and an employee of one of those lawyers who was present in the courtroom. All agree that a significant portion of the cross-examination is omitted. While their recollections differ slightly, all recall that the cross-examination was terminated when Mr. Frels was attempting to impeach Defendant Barry with what Frels claimed to be a memorandum written by or known to Barry. When Barry challenged Mr. Frels's claim that such a memorandum even existed, the Court – apparently determining that

there was no good faith basis for the question – instructed Mr. Frels that his examination was terminated and that no further questioning of Barry by the government would be permitted.

No version of these events, or anything even resembling these events, appears in the transcript.[3] And although an audiotape exists of Barry's cross-examination, the Transcript Report found no inconsistency between the transcript and the audiotape, other than a few inaudible words uttered after Mr. Ramsey's objection and prior to the Court's asking Mr. Ramsey if he had any redirect. *See* Transcript Report at 4-5. The Transcript Report further stated that "[t]here was no discernable break or lapse in the recording" at this juncture of the tape. *Id.* at 4. On the present record, however, that is far too little to conclude that there is "no substantial and significant" omission from the transcript.[4] Most importantly, it is contradicted by the proffered testimony of four witnesses. And there is no evidence that the audiotape is reliable – there are other examples of transcript not being recorded on the audiotape, and no evidence as to whether, in those incidents, there is a "discernable break or lapse in the recording." *See, e.g.,* Trans., Aug. 8, 2001 (docket # 220) at 61-65; Trans., Aug. 9, 2001 (docket # 276) at 65-71; Trans., Aug. 15, 2001 (docket # 215) at 93-94; *id.* at 98-99; Trans., Aug. 16, 2001 (docket # 280)

---

[3]  Frels in his closing argument apologized to the jury for an apparently memorable and inappropriate comment he made during Defendant Barry's testimony. *See* Trans., Aug. 20, 2001 (docket # 282) at 17 ("I expressed frustration inappropriately. I should not have indicated that I was offended by his testimony. It was wrong. . . .") It is not clear that this apology related to the incident in question, because Frels referred to the defense examination of Barry rather than to the cross-examination. *Id.*

[4]  Assuming such an incident occurred, there can be little dispute that its omission – along with an unknown additional amount of the Defendant's own testimony – would be a "substantial and significant" omission from the transcript requiring a new trial. While we have located no cases involving the omission from the transcript of a defendant's own testimony or a portion thereof, the Fifth Circuit has found that lawyers' opening statements, as well as a judge's charge to a deadlocked jury, constituted "substantial and significant omissions." *See Selva*, 559 F.2d at 1306; *Pace*, 10 F.3d at 1125. The defendant's own testimony cannot be said to be less "substantial and significant."

at 53-56. Nor has the Court Reporter explained how this transcript was produced, or why it took eight months to produce it, the answers to which might explain why the transcript reflects what was recorded on the audiotape but not what the witnesses recollect.

At least until a more complete reconstruction of Defendant Barry's cross-examination is attempted, therefore, including the opportunity for Barry to review the audiotape and cross-examine the court reporter, the Court cannot affirmatively conclude that there is no substantial and significant omission from the transcript. In the alternative to a new trial, therefore, Defendant Barry should at least be permitted to question the court reporter under oath regarding the recording and transcription of the trial, and should be permitted access to the audiotapes of the trial for purposes of conducting his own review and potential expert analysis.

### 3. *These Errors, Individually and in Combination, Render the Transcript Insufficient for Purposes of Appeal and Require a New Trial*

The Trial Transcript in this action therefore remains unreliable despite this attempt at reconstruction. Most importantly, the reconstruction revealed more than 800 errors, but left more than a third of the transcript uncorrected. Given the nature and significance of the errors among those 800 corrections that were made, the remaining third of the transcript, containing many critical portions of the trial, is entirely unreliable. Moreover, the transcript is still missing at least one significant portion of Defendant Barry's own testimony.

These errors combine to render the current version of the transcript far less than a "substantially verbatim" record of the trial. *Compare Pace,* 10 F.3d at 1124-25 (requiring, in the event a transcript is incomplete or inaccurate and requires reconstruction, that the reconstruction amount to a "substantially verbatim account" of the proceedings). Neither this Court nor the Court of Appeals, therefore, can "conclude affirmatively" that requiring Defendant Barry to base his appeal on the current iteration of the Trial Transcript will have no effect on any "substantial

right." Rather, the sort of errors that continue to permeate the transcript – especially in a circumstantial case such as this – would frustrate any attempt by the Court of Appeals to completely, fairly, and accurately review the evidence. A new trial is therefore required.

## CONCLUSION

For the foregoing reasons, Defendant Barry should be granted a new trial on any remaining counts of the Indictment upon which this Court does not enter a Judgment of Acquittal pursuant to Mr. Barry's pending Motion for Judgment of Acquittal. In the alternative, Defendant Barry should be permitted access to the backup audiotapes of the trial, and should be permitted to question the court reporter under oath regarding the recording and transcription of the trial.

We are asked to state that Mr. James Anthum Collins joins this Motion.

Respectfully submitted,

August 5, 2002

s/
_____
SAMUEL J. BUFFONE
TODD M. RICHMAN
ROPES & GRAY
1301 K Street, NW, Suite 800 East
Washington, DC  20005
PHONE:  (202) 626-3957
FAX:  (202) 626-3961

_____
MICHAEL RAMSEY
Texas Bar No. 16521000
2120 Welch
River Oaks/Welch Building
Houston, Texas  77019
PHONE:  (713) 523-7878
FAX:  (713) 523-7887

s/
_____
KENT SCHAFFER
Texas Bar No. 17724300
712 Main – 31st Floor
Houston, Texas  77002
PHONE:  (713) 228-8500
FAX:  (713) 228-0034

## CERTIFICATE OF CONFERENCE

I, Michael Ramsey, do hereby certify that on the 5th day of August 2002, I ~~(attempted to communicate)~~ (communicated) with Gary Cobe, Assistant United States Attorney in charge of the instant prosecution, who was ~~(unavailable)~~ (opposed) ~~(unopposed)~~ to Defendant Yank Barry's Motion for New Trial Due to Inaccuracy of Trial Transcript.

_____
MICHAEL RAMSEY

## CERTIFICATE OF SERVICE

I, Michael Ramsey, do hereby certify that on the 5th day of August, 2002, a true and correct copy of the foregoing Defendant Yank Barry's Motion for a New Trial Due to Inaccuracy of Trial Transcript, was hand delivered to Assistant United States Attorney Gary Cobe.

_____
MICHAEL RAMSEY

7153884_1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | § § § | |
| VS. | § § | CR-H-98-18(02) |
| YANK BARRY | § § § | |

ORDER

BE IT REMEMBERED that on this the _____ day of August 2002 came on to be heard Defendant Yank Barry's Motion for a New Trial Due to Inaccuracy of Trial Transcript (Joined by James Anthum Collins) and the Court having considered same is of the opinion that said Motion should be and is hereby

_____GRANTED.


_____DENIED.


Signed and entered at Houston, Texas on this the _____ day of August 2002.


                                                   HONORABLE LYNN N. HUGHES
                                                   UNITED STATES DISTRICT JUDGE
                                                   SOUTHERN DISTRICT OF TEXAS